IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DESHAWN FISHER, | * |
| Plaintiff, | * |
| v. | * |
|  | * CIVIL NO. JKB-24-1135 |
| ELLIOT DACKMAN, *et al.*, | * |
| Defendants. | * |
|  | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff filed this declaratory judgment action in the Circuit Court for Baltimore City against Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and two of its insureds. (ECF No. 3.) The case was removed to this Court and three Motions are now pending: (1) Plaintiff's Motion for Remand; (2) Penn National's Motion to Dismiss; and (3) Penn National's Motion to Strike Plaintiff's Jury Demand. (ECF Nos. 8, 10, 11.) No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). The Court will deny the Motions for the reasons below.

### I.  *Factual Background and Procedural History*

In this action, Plaintiff seeks to clarify whether Penn National must indemnify its insureds for damages awarded to Plaintiff in a state-court judgment against the insureds. (*See generally* ECF No. 3.) As background,[1] Defendant Jacob Dackman & Sons, LLC ("Dackman & Sons") previously owned and operated rental properties in Maryland. (*Id.* ¶ 6.) Defendant Elliot

---

[1] The facts recited here are drawn from the Complaint.

Dackman oversaw Dackman & Sons. (*Id.*) Beginning in 1991, Penn National insured Dackman & Sons and Elliot Dackman (collectively, the "Dackman parties") under a commercial general liability ("CGL") policy that contained a $1,000,000 aggregate limit. (*Id.* ¶ 10.) The policy was renewed annually until 1997. (*Id.* ¶ 11.) Plaintiff alleges that the policy included a "Per Location Endorsement" that amended the aggregate limit "such that $1,000,000 in coverage applied separately to each location owned or rented by" the Dackman parties. (*Id.* ¶¶ 10–13.) In 2014, Penn National informed Elliot Dackman that the aggregate limit for the period from June 1993 to June 1996 was exhausted and that the policy did not include a per-location endorsement from June 1993 to June 1996. (*Id.* ¶ 27.)

On July 5, 2017, Plaintiff filed a civil action against the Dackman parties and other defendants in the Circuit Court for Baltimore City. (*Id.* ¶ 18.) In that case, Plaintiff alleged injuries resulting from his exposure to lead-based paint at one of Dackman & Sons's properties. (*Id.*) After a jury trial, the court entered a judgment (the "Tort Judgment") in the amount of $2,212,874 in favor of Plaintiff and against the Dackman parties on September 12, 2019. (*Id.* ¶ 21.) No portion of the Tort Judgment has been satisfied. (*Id.* ¶ 26.)

Plaintiff filed the instant action in the Circuit Court for Baltimore City on March 1, 2024. (*See generally id.*) The Complaint demands a jury trial and seeks a declaration that the Dackman parties' CGL policy contained a per-location endorsement between 1993 and 1996 "such that there is $1,000,000 of insurance coverage for each location owned or rented by" the Dackman parties. (*Id.* at 8–9.) On April 18, 2024, Penn National removed this case based on diversity jurisdiction. (ECF No. 1 ¶¶ 7–10.) Three Motions are now pending: (1) Plaintiff's Motion for Remand; (2) Penn National's Motion to Dismiss; and (3) Penn National's Motion to Strike Plaintiff's Jury Demand. (ECF Nos. 8, 10, 11.)

## II.     Motion for Remand

The Court must resolve jurisdictional questions first. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999). Plaintiff, a Maryland citizen, seeks remand on the grounds that diversity jurisdiction is precluded by the presence of the Dackman parties, both of whom are Maryland citizens who were properly joined and served. (ECF No. 11 ¶¶ 6–8.) Penn National, a Pennsylvania citizen, contends that removal on the basis of diversity jurisdiction will be made proper by the Court's realignment of the Dackman parties as plaintiffs based on their interests in this matter. (ECF No. 14 at 3–7.) As an alternative to realignment, Penn National asks the Court to disregard the Dackman parties' citizenship due to their status as nominal parties and/or the fact that Plaintiff fraudulently joined them in this case. (*Id.* at 7–14.)

### A.     Legal Standards

When a case is removed based on diversity of citizenship, the Court applies state substantive law and federal procedural law. *See Chapman v. Clarendon Nat'l Ins. Co.*, 299 F. Supp. 2d 559, 562 (E.D. Va. 2004). The Court "treats a state court declaratory action that is removed as invoking the Federal Declaratory Judgment Act," *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013), which provides that, in "a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," 28 U.S.C. § 2201(a).

To exercise jurisdiction over this case, the Court must ensure: (1) that it has an independent basis for jurisdiction over the parties (such as diversity jurisdiction) and (2) that Plaintiff alleges an actual controversy under Article III of the United States Constitution. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).

### B.     *Analysis*

As explained below, the Court may exercise jurisdiction over this case because it has an independent basis for jurisdiction and because the Complaint alleges an actual controversy.

#### 1.     *Independent Jurisdictional Basis*

The Court first considers whether it has an independent basis for jurisdiction. This case was removed from a Maryland trial court based on diversity jurisdiction, so the Court may exercise jurisdiction if the amount in controversy exceeds $75,000,[2] if no party shares common citizenship with any party on the opposite side of the case, and if no defendant who was properly joined and served is a citizen of Maryland. *See* 28 U.S.C. §§ 1332(a), 1441(b)(2).

As the "first step" in determining whether diversity jurisdiction exists in a removed case, "the Court must align the parties according to their interests, determining which ones[] . . . should be considered plaintiffs and which ones defendants."[3] *St. Paul Fire & Marine Ins. Co. v. Croker, Inc.*, 21 F. Supp. 2d 537, 540 (D. Md. 1998). To do so, the Court must "look beyond the pleadings" and apply the "principal purpose" test. *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 F. App'x 313, 316 (4th Cir. 2012) (per curiam). The test involves two steps: (1) determining "the primary issue in the controversy" and (2) "align[ing] the parties according to their positions with respect to the primary issue." *U.S. Fid. & Guar. Co. v. A&S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995). "If the alignment differs from that in the complaint, the court must determine whether complete diversity continues to exist." *Id.*

---

[2] In declaratory judgment actions, "the amount in controversy is the value of the . . . legal claim to be declared, such as a right to indemnification[.]" *United Specialty Ins. Co. v. BKJ Express, LLC*, Civ. No. 21-49, 2022 WL 18702, at *3 (W.D. Va. Jan. 3, 2022).

[3] Plaintiff argues that the Court should not consider the issue of realignment because it was not raised in the Notice of Removal. (ECF No. 23 at 5–7.) However, "[f]ederal courts have a duty to ensure that parties are properly aligned, and, if necessary, they must carry out that duty sua sponte." *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 681 n.2 (5th Cir. 2012).

Here, the issue is whether Penn National (the insurer) is obliged to indemnify the Dackman parties (the insureds) for damages awarded in the Tort Judgment. (*See* ECF No. 3 ¶ 33–35.) Courts have determined—and this Court agrees—that the interests of the parties in such an action require an insured and an injured party to be placed on the opposite side of the case from an insurer. *See, e.g.*, *Home Ins. Co. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998); *Davis v. Great N. Ins. Co.*, 516 F. Supp. 3d 1345, 1349 (S.D. Fla. 2021). Because Plaintiff and the Dackman parties share an interest in establishing "indemnification for [Plaintiff's] claims," the Court will realign the Dackman parties as plaintiffs. *Davis*, 516 F. Supp. 3d at 1349.

Properly aligned, Plaintiffs are all Maryland citizens and Defendant is a Pennsylvania citizen. (ECF No. 3 ¶¶ 1–4.) The amount in controversy exceeds $75,000. (*Id.* ¶¶ 25–26.) The Court therefore has independent grounds for jurisdiction.[4] 28 U.S.C. §§ 1332(a), 1441(b)(2).

### 2. Actual Controversy

Jurisdiction is also proper because the Complaint alleges an actual controversy. "A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy'" under the Declaratory Judgment Act. *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 n.3 (4th Cir. 1994). In such a dispute, the injured third party has standing to pursue declaratory relief against the insurer. *See First Fin. Ins. Co. v. Brumbaugh*, 553 F. App'x 282, 289 n.3 (4th Cir. 2014).

Penn National argues unpersuasively that this case is not justiciable because Plaintiff "seeks nothing more than to 'correct'" Penn National's 2014 representation to its insureds that certain policy limits were exhausted. (*See* ECF No. 10-1 at 8.) On the contrary, Plaintiff seeks to

---

[4] Because they are raised in the alternative, the Court does not reach Penn National's arguments concerning nominal-party status and fraudulent joinder. (ECF No. 14 at 14.)

clarify Penn National's obligations with respect to indemnification for a judgment that has not yet been satisfied. (ECF No. 3 ¶¶ 26, 28–29, 33–35.) Because an actual controversy and diversity jurisdiction exist, the Court must deny Plaintiff's Motion for Remand.

### III. Motion to Dismiss

The Court next turns to Penn National's Motion to Dismiss. The Court will deny the Motion for the reasons explained below.

#### A. Legal Standards

Penn National has moved for dismissal under Federal Rule 12(b)(6), so the Court must determine whether the Complaint states "a claim to relief that is plausible on its face." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024) (quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017)). The Court must also accept Plaintiff's allegations as true and draw all reasonable inferences in his favor. *See Hall*, 846 F.3d at 761.

When jurisdiction over a declaratory judgment action is proper, the Court must rule on the merits of the case unless it has a "good reason" not to do so. *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004). The Court considers four factors when determining whether dismissal pursuant to Federal Rule 12(b)(6) is warranted:

> (1) whether [a declaratory] judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; [and] (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing - that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable."

*Norfolk Dredging Co. v. Phelps*, 433 F. Supp. 2d 718, 721 (E.D. Va. 2006) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422–23 (4th Cir. 1998)).

### B. *Analysis*

Penn National argues that, for three separate reasons, the Court cannot afford complete relief from the controversy giving rise to this action and must dismiss the Complaint. (*See generally* ECF No. 10-1.) As an initial matter, Penn National contends that the Court cannot provide complete relief because Plaintiff's Prayer for Relief is phrased in terms of a single issue (the effect of the policy's per-location endorsement) which may not dispose of other issues relevant to indemnification, such as "exhaustion, the amount of indemnity coverage available, allocation issues, [and] the amount of required indemnity payment[.]" (*Id.* at 14.)

However, the Court's analysis of whether complete relief can be afforded is not limited to the Prayer for Relief. Irrespective of whether a party seeks a declaratory judgment, Federal Rule 54(c) requires the Court to grant "whatever relief is appropriate" based on the facts proven. *Pitrolo v. Cnty. of Buncombe*, 589 F. App'x 619, 626 (4th Cir. 2014) (per curiam). If the Court ultimately finds that the judgment requested in the Complaint is too narrow to afford complete relief, it will be obliged to enter a judgment that differs from the Prayer for Relief. *See id.*; Fed. R. Civ. P. 54(c). Accordingly, Penn National's argument for dismissal on this basis is unavailing.

Penn National also contends that this action is untimely because it was filed more than three years after Penn National wrote to Elliot Dackman in 2014 to inform him that certain policy limits had been exhausted. (ECF No. 10-1 at 10–11.) In Maryland, a civil action at law must be filed within three years of the date on which it accrues. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Maryland courts apply "the period of limitations applicable to ordinary actions at law and suits in equity . . . to actions for declaratory relief." *Com. Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1193 (Md. Ct. Spec. App. 1997). If a plaintiff seeks declaratory relief "before there has been any breach of the obligation in respect to which said declaration is sought, . . . the

right to such relief is not barred by lapse of time." *Id.*

As is relevant here, "[a]n insurer's contractual duty to indemnify an insured is ordinarily not breached until an injured tort claimant has obtained a determination of liability and damages in an underlying tort action, and the insurer refuses to pay." *Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999). "The statute of limitations does not begin to run until that time." *Id.* Because the Complaint does not allege that Penn National refused to pay damages *after* the Tort Judgment was entered, Penn National's statute-of-limitations argument is unavailing. *See id.*

Lastly, Penn National argues that declarations pertaining to the Dackman parties' insurance policy between 1993 and 1996 show that the policy did not include a per-location endorsement during that time. (ECF No. 10-1 at 15.) Accordingly, Penn National contends that Plaintiff cannot seek declaratory relief based on coverage allegedly provided by the endorsement. (*Id.*)

An insurance policy must be construed as a whole. *See Connors v. Gov't Emps. Ins. Co.*, 113 A.3d 595, 603 (Md. 2015). The renewal of a policy is an extension of its life and is not a new contract. *See Gov't Emps. Ins. Co. v. Ropka*, 536 A.2d 1214, 1225 (Md. Ct. Spec. App. 1988). When an insurance policy is renewed, "the insured is justified in assuming that . . . all the terms and conditions of the renewal will be the same as those of the original, unless he has notice of some proposed change." *Mallette v. Brit. Am. Assurance Co.*, 46 A. 1005, 1007 (Md. 1900).

A careful review of the Complaint reveals Penn National's final argument for dismissal to be unavailing. Therein, Plaintiff alleges that the Dackman parties' policy contained a per-location endorsement on a "Declarations" page that pertained to the period from 1991 to 1992. (ECF No. 3 ¶ 14.) Plaintiff also alleges that, although it was not noted on the "Declarations" page, the policy contained the endorsement between 1992 and 1994. (*Id.*) Plaintiff acknowledges that the policy did not explicitly contain the endorsement between 1994 and 1996, but he alleges that an insurance

broker informed Elliot Dackman that the policies "were renewed and issued under like terms and conditions" between 1994 and 1996. (*Id.*) Based on the foregoing, Plaintiff plausibly alleges that the policy contained a per-location endorsement between 1991 and 1996. His request for relief is therefore not barred insofar as it is premised on the existence of a per-location endorsement during this period.

Because Penn National provides no persuasive grounds for the dismissal of this case, the Court will deny Penn National's Motion to Dismiss.

### IV. *Motion to Strike*

As a final matter, Penn National has moved to strike Plaintiff's demand for a jury trial on the grounds that Plaintiff has "no right to a jury trial [on his] purely equitable claims." (ECF No. 8-1 at 2.) Plaintiff responds that his right to a jury trial is preserved because this action "is in the nature of a breach of contract." (ECF No. 19 ¶ 5.)

The Seventh Amendment preserves the right to a jury trial in cases "at common law," but it does not guarantee that right for cases in equity. *See In re Lockheed Martin Corp.*, 503 F.3d 351, 354 (4th Cir. 2007). To determine whether the right exists in a declaratory judgment action, the Court examines "whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment vehicle." *Id.* at 355.

If declaratory relief were unavailable to Plaintiff, he could litigate the issue raised in this case by filing a breach-of-contract action against Penn National. *See Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999) (recognizing that a tort claimant may sue a tortfeasor's insurer for breach of the insurer's contractual duty to indemnify). If Plaintiff asserted his claim in this manner, his right to a jury trial would be preserved. *See* 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2313 (4th ed. 2020) (recognizing that, in the absence of

the declaratory-judgment remedy, a party injured by an insured could bring an action against an insurer "for the amount of the judgment, which would be jury triable"). Because Plaintiff would be entitled to a jury trial if he filed a breach-of-contract action, the Court must deny Penn National's Motion to Strike Plaintiff's Jury Demand. *See In re Lockheed Martin Corp.*, 503 F.3d at 355.

### V.    Conclusion

For the reasons stated above, a separate Order shall issue denying the pending Motions and realigning the Dackman parties as plaintiffs.

DATED this __15__ day of July, 2024.

BY THE COURT:

_____
James K. Bredar
United States District Judge