IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DESHAWN FISHER, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-24-1135 |
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court is Plaintiff Deshawn Fisher's Motion to Compel. (ECF No. 73.) The Motion will be granted for the reasons that follow.

### I. *Background*

In this action, Plaintiff Fisher seeks to require Defendant Pennsylvania National Mutual Casualty Insurance Company ("Penn National") to indemnify its insureds, Realigned Plaintiffs Jacob Dackman & Sons, LLC ("Dackman & Sons") and Elliott Dackman (collectively, the "Dackman parties"), for damages that were awarded to Fisher in a state court judgment against the Dackman parties in 2019. (*See generally* ECF No. 44.)

From August 1993 to May 1995, Fisher resided at or visited 1723 Montpelier Street—one among a significant number of residential properties in Baltimore City that were owned and operated by Dackman & Sons.[1] (*Id.* ¶¶ 6, 18.) Fisher filed a civil action against the Dackman parties and other defendants in the Circuit Court for Baltimore City on July 5, 2017, alleging injuries resulting from his exposure to lead-based paint at 1723 Montpelier Street. (*Id.* ¶ 18.) After

---

[1] The facts recited here are those alleged in Fisher's First Amended Complaint.

a jury trial, on September 12, 2019, the court entered a judgment in favor of Fisher and against the Dackman parties in the amount of $2,212,874 (the "Tort Judgment"). (*Id.* ¶ 21.) No part of the Tort Judgment has been satisfied. (*Id.* ¶ 26.)

From June 1991 to August 1997, the Dackman parties were insured by Penn National under a commercial general liability policy with a $1,000,000 aggregate limit. (*Id.* ¶¶ 10–11.) Fisher alleges that throughout this period, the policy included a "per location endorsement" amending the aggregate limit "such that $1,000,000 in coverage applied separately to each location owned or rented by" the Dackman parties. (*Id.* ¶¶ 10–13.) Penn National agrees as to the 1991–92, 1992–93, 1996–97, and 1997 policy years (the "Uncontested Policy Years"), but claims that in the 1993–94, 1994–95, and 1995–96 policy years (the "Contested Policy Years"), the policy did *not* include a per location endorsement and the aggregate limits applicable to these policy years have been exhausted. (*Id.* ¶ 27.)

Fisher filed the instant action in the Circuit Court for Baltimore City on March 1, 2024, seeking a declaratory judgment that the per location endorsement applied during the Contested Policy Years. (ECF No. 3 ¶¶ 32–35.) Penn National removed to this Court based on diversity jurisdiction. (ECF No. 1 ¶¶ 7–10.) Fisher amended his Complaint on October 3, 2024, adding a breach of contract claim and seeking judgment against Penn National in the amount of the Tort Judgment, plus interest, costs, and further relief as the Court deems appropriate. (ECF No. 44 ¶¶ 36–43.) Now pending before the Court is Fisher's Motion to Compel (ECF No. 73).

## II.  *Legal Standard*

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." "The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr*

2

*v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010).  The considerations pertinent to proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted." *Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2020 WL 1890506, at *8 (D. Md. Apr. 15, 2020) (citation and internal quotation marks omitted).  A district court has "wide latitude in controlling discovery." *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018) (citation and internal quotation marks omitted).

### III. *Analysis*

Fisher's Motion to Compel seeks to compel information concerning the payments Penn National has made under the Dackman parties' policies—specifically, Fisher seeks production of "loss runs, including the name of each payee, the amount paid on each claim, how the payment was allocated by policy year, and when the payments were made, for all seven of the policies [Penn National] issued to [the Dackman parties]." (ECF No. 73 at 4.)  Because Fisher has established that this information is relevant and proportional to the needs of the case, and Penn National has not shown that discovery should not be permitted, the Court will grant Fisher's Motion.

#### A. Relevance

The discovery Fisher requests is relevant to whether or not the Contested Years' policies were exhausted, as Penn National claims they were.  In discovery, Penn National produced two "Claim Tracking Report Summaries" (ECF No. 73-1), which it claims "demonstrat[e] that the contractual limits of indemnity coverage… were exhausted." (*See* ECF No. 73 at 5.)  Fisher admits

3

that the summaries "show that payments in excess of the claimed $1 million aggregate limit were paid out each of those years." (ECF No. 73 at 7.) However, the summaries do not contain detailed information concerning each individual payment, information which Fisher argues would enable him to evaluate whether "losses were allocated to the three years in question erroneously and… made it *appear* the policies were exhausted." (*Id.* (emphasis added).) In other words, Fisher seeks to explore the theory that even if the per location endorsement did *not* apply to the Contested Policy Years, still Penn National has breached its contract because coverage under the relevant policies should remain available.

Penn National argues that "the second guessing of allocation under a theory of 'improper erosion' is not supported," (ECF No. 75 at 7 (citing *Axis Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840 (9th Cir. 2020) and *Elliott Co. v. Liberty Mut. Ins. Co.*, 434 F. Supp. 2d 483, 499 n. 23 (N.D. Ohio 2006)).) But neither case is binding or on all fours. In *Axis Reinsurance Co.*, the Ninth Circuit held that "excess insurers generally may not avoid or reduce their own liability by contesting payments made at prior levels of insurance, unless there is an indication that the payments were motivated by fraud or bad faith" or they "include[ed] specific language in their policies reserving a right to challenge prior payments." 975 F.3d at 844. Fisher is not an excess insurer seeking to avoid or limit his liability, but rather a third-party beneficiary of the Dackman parties' policies. Permitting Fisher to question Penn National's assignment of claims or payments to particular policy years would do nothing to undermine the insured's objectively reasonable expectations or put coverage of the insured's claims at risk—the Ninth Circuit's central justification for the *Axis* rule. *See id.* at 842, 846.

Similarly, the holding in *Elliott Co.* is inapplicable. The footnote Penn National cites implies only that an insurer may, on summary judgment, establish that it exhausted a policy by paying a settlement without affirmatively demonstrating that the settlement was correlated with

4

specific losses during the relevant policy period. 434 F. Supp. 2d at 499 n.23. Permitting Fisher the discovery he seeks would not imply that Penn National is categorically required to make this demonstration to prevail on summary judgment, but only that evidence of an improper correlation, if presented, would be relevant.

In sum, Penn National has not identified any authority that would prevent Fisher from challenging Penn National's claim that it exhausted the policies at issue. The Court is persuaded that the specifics Fisher seeks to discover—the name of each payee, the amount paid on each claim, how the payment was allocated by policy year, and when the payments were made—may support such a challenge and are therefore relevant.

Further, information concerning the Uncontested Policy Years is relevant for an additional reason. As Fisher puts it: he "should be entitled to assess whether Penn National handled claims differently between the policy years they acknowledge had the [per location endorsement] coverage and those they claim did not." (ECF No. 73 at 9.) Even if such evidence would not be admissible at trial for the purpose of interpreting the policy's terms (which is not now before the Court), Fisher may indeed explore this evidence to establish what the agreed-upon terms of the policy were in the first place. It is exactly this question that the parties primarily dispute, as they disagree not about the meaning of the per location endorsement but about whether it applied during the Contested Policy Years at all. If, for example, Fisher could show that Penn National handled claims the same way across all seven policy years, that would, to at least some extent, undermine Penn National's assertion that it agreed to deeply different terms in some years than it did in others.

### B. Proportionality

Fisher has likewise satisfied the Court that the discovery sought is proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Whether Penn National agreed to be bound by the per location endorsement in the Contested Policy Years, and whether it exhausted its policies in those years, are of critical importance to Fisher's claims. The amount in controversy—more than $2.2 million—is substantial. Only Penn National has access to the loss runs Fisher seeks to discover. Penn National is a major corporation represented by competent counsel. While the specific documents sought are not the only evidence that may bear on the issues in question, they may meaningfully inform their resolution. And the burden or expense of the discovery sought is not particularly high, as Penn National appears to have ready access to the documents in question.

The only proportionality factor that Penn National attempts to dispute in its briefing is its burden, arguing that "multiple hundred, if not thousands, of attorney hours" would be needed to evaluate any claim-by-claim challenge Fisher might make to the policies' exhaustion, and that it "would be a waste of judicial resources" to have a jury delve into claim allocation, especially without the benefit of expert testimony. (ECF No. 75 at 9–10.) But these are not the kinds of burdens that bear on a discovery request's proportionality. Rather, it is the burden or expense "of the proposed discovery" that is pertinent, *see* Fed. R. Civ. P. 26, and Penn National makes no argument that it would be particularly taxing to identify, review, or produce the loss runs Fisher seeks.

### C. Other Considerations

Finally, Penn National argues that discovery should not be permitted because Fisher's request is "pretextual and for improper purpose." (ECF No. 75 at 11.) Penn National represents that it "sought assurances that information of individual claim payments would be protected and not used. But counsel for Fisher, who is a renowned lead paint attorney who represented hundreds of claimants and coordinates regularly with members of the plaintiff lead paint bar, would not give

those assurances." (*Id.* at 3–4.) Relatedly, Penn National requests that if the Court grants Fisher's Motion, that "Penn National be allowed to use a numeric number [*sic*] for each claimant so that their identities are not disclosed" and that "[Fisher] be required to provide satisfactory assurances… that [the requested discovery] is not being used for improper purposes of providing information to other lead paint counsel or to seek other potential claimants." (*Id.* at 12.) These requests will be denied.

For the reasons described above, claimants' names are relevant. Fisher's ability to evaluate the policies' exhaustion depends on his ability identify which specific claimants were paid as is indicated on the loss runs: they will permit him to assess, for example, which payments may have resulted from settlements or judgments. (*See* ECF No. 76 at 3.) Further, though it is not addressed by the parties, the Court notes that it has entered a Stipulated Order Regarding Confidentiality of Discovery Material in this case. (ECF No. 40.) The Order permits Penn National to designate the requested discovery as "CONFIDENTIAL" and thereby obligate Fisher not to "use[] or disclose[] [the information] for any purposes whatsoever other than preparing for and conducting [this] litigation…." absent a successful challenge to this designation. (*Id.* ¶1(c).) Penn National's briefing does not establish a need for greater protection than is provided by this Order.

## IV.   Conclusion

For the reasons stated above, the Motion to Compel (ECF No. 73) will be granted in an accompanying Order.

DATED this 10 day of September, 2025.

BY THE COURT:

*/s/ James K. Bredar*
James K. Bredar
United States District Judge

7